We're ready to hear argument now in the third case, Shahi against the State Department. Ms. Glazer. Good morning, Your Honors. Nicolette Glazer appearing on behalf of the plaintiff appellants. I have reserved five minutes for rebuttal, if the court will permit me. May it please the court. The district court issued a final judgment dismissing all claims of all plaintiffs after finding that a subset of the named plaintiffs, specifically the DV winners, failed the article pre-redressability argument. As we're standing today, my opposing counsel has conceded that the district court's standing analysis was erroneous. That is in footnote two in their responsive brief at page 14. Based on that, Your Honor, we would ask the court to remand the matter to the district court to decide the issues that were raised but never addressed, specifically the Rule 12b6 motion. Even if an outlier... Counsel, I would like to get a couple of factual matters straight. Are all the plaintiffs members of the Gomez class? All the DV plaintiffs will be considered members of... No, I'm asking all the plaintiffs. No, they are not. Who in particular is not a member of the Gomez class? The Amdak Association, which is a named plaintiff, the three businesses who are sponsor of the DV winners are not members of the class, and the 11 US citizens and legal permanent residents who are sponsors and relative of the DV applicants are not member of the class. Okay, second question. Has any of the plaintiffs intervened or tried to intervene in Gomez? No, Your Honor, they did not. In the Gomez case was not certified until after the original preliminary injunction that benefited everybody. Basically, the first Gomez decision was a preliminary step to a vacator. I was a preliminary step under the APA, but it coupled it with a decision to benefit all DV applicant, and it was meant so that the people do not rush in to intervene in a Gomez case. The class was certified about two weeks later after the Gomez case found that the government has not discharged the obligation imposed with the first injunction in good faith. This case, however, Ms. Glazer, was filed three months after that certification decision was made in the Gomez litigation, correct? That is correct, Your Honor. Why was this case filed? Your Honor, the way we saw the cause of action that we saw in this case accrued on October 1st, when these people, this DV plaintiff, lost the opportunity that was given to them based on the notion. So the claim accrued after they lost the opportunity because the government discharged. And also, this particular plaintiff challenged an aspect of the procedure or the rules imposed that were not part of the Gomez case. That's why the Gomez case did not grant relief for the entire suspension of the diversity visas. So this case presents additional claims that were never part of the Gomez litigation. Which procedural charge are you noting there that differed from the Gomez case? The Gomez case challenged only the activity of the suspension based on the travel bans that were done in April. This case challenged the systematic effort that started before the start of the year to disseminate the diversity visas by not processing from day one, October 2020, when the two proclamations were not in effect. And in fact, the Gomez case specifically mentioned that the remedy is only for the months that the government did not process visas after restarting and allowing consulate to do some processing. So the claim that we're making is based on the concerted efforts to eliminate the DV program that are completely irrespective from the travel ban, which was the main point of the Gomez litigation. Ultimately, the court found that there is no, didn't address those claims as to the ban, the travel ban and the travel ban expired. Sorry, didn't expire. It was actually rescinded by President Biden on February 24th, 2021. And in that revocation, President Biden specifically found that the DV 2020 were harmed by the activities of the State Department. You will help me, I'm certain. But because I read the plaintiff's brief as purporting not to seek issuance of the visas, but simply to have their claims adjudicated. I'm sorry. In the absence of visas, how would that be anything other than illusory relief? In other words, what would you gain? What would the plaintiffs gain from an adjudication that seems as if it cannot be enforced? We wonder if the plaintiffs get their visa application adjudicated, some of them will likely receive visas, but the district court does not have an authority to order in our position to issuance of visas that belong exclusively to a consular officer. So what we are asking is for the courts to order the adjudication of these application. Now it's relevant not only in that context, but also with respect to the Gomez litigation. If some of these applications are found to be bona fide because they meet the requirements, then they will benefit because they will be able to benefit if the 9,000 visas in Gomez are found because the Gomez is an appeal before the district court and the government is arguing that there's no authority to preserve visas. But there is a bigger, if there is a declaratory judgment, or if there is a finding that these visas should be adjudicated, that can provide benefits to these applicants. And I'll give an example, many of them are Ukrainians. They can apply for a humanitarian parole. One of the aspects for that is to determine whether there is a public interest. If the court is to find that the concerted government action in suspending a congressionally enacted program has harmed the DV applicants, then that is an effect that this particular finding, a declaration, could be considered by the consular officer or DHS. So there's definitely- I'm still, maybe I'm just duplicating Judge Rovner's question. What would the relief be? The relief requested is first to order the adjudication and told the eligibility of the plaintiffs. If the eligibility is told, then they can proceed to have their petitions adjudicated. And some of them will receive, no doubt, the visas. So do you want us to overrule Edir and Taylor? Well, this case is not, is distinguishable. The most important- The answer, look, the answer to that question is either yes or no, and then you can tell me why. Do you want us to overrule those cases? Yes, Your Honor. And I believe the Supreme Court has, in effect, invalidated the rationale of Ahmed and Taylor in Bernhardt v. Peabody Call Company. A year after they- Has any court of appeals disagreed with either Erwin or Taylor? No, Your Honor, they have not. But they have not had, none have addressed the 2003 decision of the Supreme Court, which came after Edir. And he has specifically said that just because the power of the government has expired does not prohibit a tardy performance. And that's what the Edir Postcard says. The provision does not allow the government to do something, but the Supreme Court made clear in Bernhardt- Look, there are multiple questions here. One is whether any equitable exceptions can be made. That depends on whether the rule is jurisdictional. Both Edir and Taylor, in different ways, held that it is. But the second question is whether the statute itself precludes equitable exceptions. I mean, I'm thinking of 1154. I hate to say something like that. 1154A1I, little two, big two, which just says that aliens shall remain eligible to receive such visa only through the end of the specific fiscal year in which they were selected. That sounds like a rule about what relief is available. Why isn't that rule binding? Well, Your Honor, first, it's not jurisdictional because it does not speak to the jurisdiction of the court. The Supreme Court has- Suppose we overrule the two cases and say it's not jurisdictional, and we disagree with every other court of appeals and create a conflict. Suppose we do all of that. How do you get past the statutory language? Well, the statutory language, Your Honor, speaks of eligibility. It doesn't say what happens after the fiscal year expires. And under Bernhardt, the question is, can the government proceed and do a target performance if it's ordered? And the answer by the Supreme Court is absolutely- Now, look, let me read you the language again. It says, shall remain eligible to receive such visas only through the end of the specific fiscal year for which they were selected. That sounds like a limitation of particular remedies. Well, Your Honor, the question then becomes if it's not jurisdictional and if it's a deadline, then it's a subject to tolling. If it's subject to tolling, then the relief can be extended. No, look, the Supreme Court has put rules in many categories, one of which they call mandatory case processing doctrines, which even when the rule is not jurisdictional, must be enforced if properly invoked. So to use the Supreme Court's current terminology, I'm asking you why that statute, I don't even want to try to read the citation again, isn't classified as a mandatory case processing doctrine. Because it is not speaking of any claims. It does not impose any deadline on the applicant. It simply is the internal government processing rule, which the Supreme Court- Yes, it is a limit on what the agency can do. And one might think that unless that limit is unconstitutional, the limit has to be enforced when it's invoked. But the Supreme Court specifically said that if the statute does not provide a clear and an ambiguous consequence for failure of the government to act, tardy performance is not unlawful. Look, there is a clear and unambiguous consequence. Shall remain eligible to da-da-da-da-da only through the end. It's hard to imagine clearer language than that. Your Honor, if I may read the Bernhardt finding, it says the word shall with a specific date could not possibly be read to prohibit action outside of the statutory period. And that is at page 172 of the decision. Should this case be transferred and consolidated with Gomez? Your Honor, I don't believe that that has been requested. Gomez is on an expedited scheduling. The appeal actually from the response is due today. And I'm saying that because one of my other cases was consolidated in that. And it's due to be heard by September 9th. So I would say if the court would like to wait for the Gomez decision, I would think a stay of this case may be proper because they may address some aspects that may be relevant to at least count one of the complaints. You see, like Judge Easterbrook, I have been trying to figure out what possible relief the plaintiffs can gain here that they're not asking for in the Gomez suit, except of course, the ones that you say are not in the suit. Well, the Gomez case ask for, basically is asking the court to allow the 9,095 visa preserve. There is about 40,000 people who will still not be adjudicated. So the Gomez case may provide some relief to this plaintiff, it may not. The question is if the court is to order the adjudication of their application, some of them may receive visas, if they're eligible, some will not. Furthermore, the declaratory relief and in those of the Przewalski, last term the court says a declaration in the form of a nominal damages is enough to provide a relief. That's up to the district court, whether he will find that any equitable relief is available. That's a merit question that has never been addressed. Your Honor, I believe I'm out of time. Can I reserve the 14 seconds for a bottle? Certainly. We'll even round it up to two minutes. Thank you, Your Honor. Ms. Ramos. Good morning, Your Honors, and may it please the court. Michelle Ramos on behalf of the government. Appellants primarily consist of approximately 188 selectees for the fiscal year 2020 diversity visa program who filed a lawsuit 80 days after the fiscal year 2020 deadline for diversity visa issuance. The district court applied this court's binding precedent of Adair v. INS and Taylor v. McCammon and dismissed appellant's lawsuit for lack of standing. However, even if appellants had established standing, they failed to state a claim upon which relief could be granted. The district court properly dismissed appellant's remaining requests for monetary and declaratory relief for lack of jurisdiction. The government respectfully requests that this court affirm the district court's dismissal. Ms. Ramos, why did the... I'm sorry, Judge Rovner. No, no, please, Judge Berman. Ms. Ramos, why did the government change from this being a 12B1 dismissal to a 12B6 dismissal? Your Honor, the government argued both 12B1 and 12B6 in its motion to dismiss before the district court. The district court was bound by this court's precedential decisions in Adair and Taylor. The government continues to respect this court's decisions in Adair and Taylor, and in fact, believes that this panel cannot overturn those prior decisions as those were panel decisions. However, the government respectfully submits that the analysis in Adair and Taylor goes towards whether appellants are entitled to the remedy they seek. Here, appellants are legally precluded by a statute from obtaining the relief they seek. This means that appellants' claims fail on their merits. And thus, the government respectfully requested that this court instead affirm on this alternative basis. Why haven't the government sought to either stay this case or transfer it to the D.C. Circuit to consolidate with Gomez? It certainly seems largely duplicative, just not completely. Your Honor, this case is very different from the diversity-based litigation that's ongoing in D.C. and the D.C. Circuit. In those cases, each one was filed before the end of the fiscal year for the applicable fiscal year of the plaintiffs in those cases. Here, appellants filed 80 days after the end of the fiscal year. Therefore, by the time that they filed, there was no authority, equitable or otherwise, to grant them the relief that they sought. They filed too late. Furthermore, the 188, approximately 188 appellants who are diversity program selectees are members of the Gomez class in that Gomez litigation there. So to the extent that those individuals would like to bring any claims relating to the orders in that case, the preliminary injunction or otherwise, the proper forum for them to do that to raise it through the class action in the Gomez litigation. They've not done so. Instead, they filed this case before the Northern District of Illinois. They admitted in their briefing at the district court, and I believe before this circuit, that any separate lawsuits filed would be either held in advance or dismissed pursuant to the first filed rule. The Gomez litigation was filed in May of 2020. The class was certified September of 2020. Appellants filed this suit in the Northern District of Illinois in December of 2020. So to the extent that they may be eligible for any relief in that Gomez class action, they wouldn't need to seek it in front of the district court there. What is the status of briefing of the Gomez appeal? I'm not interested in the timetable so much as I'm interested in something I should have asked Ms. Glazer, which is have the plaintiffs in this case filed an amicus brief in Gomez? No, Your Honor, they have not. And the briefing at the circuit, as Ms. Glazer mentioned, there is a filing due today. The final briefing filing is due on May 5th. The Gomez preliminary injunction that the appellants here refer to, the district court has stayed that injunction pending the outcome of the D.C. Circuit appeal. So therefore, that preliminary injunction reserving visas is presently stayed under the district court's order awaiting the district court's resolution of the appeal. Even if the appellants had demonstrated standing, the government, as I noted, asked this court in its response brief to affirm on the alternative ground of failure to state a claim upon which relief can be granted. Here, as this court found in Adair, appellants are not entitled to the relief of diversity visa issuance beyond the end of the statutory fiscal year deadline. They are legally precluded from obtaining the relief that they seek. And this means that appellant's claim fails on its merits and should be dismissed for failure to state a claim upon which relief could be granted. Suppose the statute, instead of having the language that I've now quoted a couple of times, and I'm not gonna give you a citation to it again, it's ghastly, suppose that language just said the Department of State must make its final decision by the end of the specific fiscal year, period. Suppose the statute just said that. Would it be possible for a court to say if the department didn't fulfill that command that it must do so belatedly? Your Honor, under that reading of the statute, I would say that the decision has been made. There's been no visa issuance ahead of the end of the fiscal year. And that is the case for thousands each year. The statute you referred to, 1154, I will save myself the rest of it as well. I'm sorry, I'm sorry, Ms. Ramos. The microphone you're speaking into is not picking up your voice very well. I'm afraid I'm not getting your answer. I'm sorry, Your Honor, I'll speak up and see if that assists. The government's position under that hypothetical reading of the statute would be to the extent that there has been no decision at the end of the year, that is the decision. There's no issuance of a diversity visa. And that is the case for thousands of diversity visa selectees each year. I'm really, I'm really puzzled. What do you make of cases like Brock against Pierce County? I know the parties haven't discussed it here. But there are a number of cases in the Supreme Court dealing with deadlines for administrative action. And occasionally a court of appeals will say once the deadline passes, the private litigant necessarily loses. The Supreme Court said in Brock, and it said in other cases, that that is simply wrong. When an administrative agency blows past a statutory deadline, that is subject to judicial correction. Your Honor, here, the statute does not require adjudication of every application by the end of the year. I understand that. I was asking you to consider a hypothetical revision of the statute, which puts the onus on the State Department to act by a certain time. And then trying to follow up with Brock, and then we might explore whether this statute is materially different. That's what I was trying to do with Ms. Glazer. But we need to pin down what would happen if the statute just were a deadline for administrative action. Your Honor, if the deadline required adjudication by the end of the fiscal year, then yes, Your Honor, we might be in more of the hypothetical situation that you point to. Here, that does not square with the other statutes and regulations governing here. 1154 permits the State Department to issue up to 55,000 diversity visas each year. The department over-selects that number in order to ensure it can issue as many as possible. In fiscal year 2020, the department selected 47,731 selectees for the lottery. Combining that with their derivative spouses and children, it totaled 90,215 applicants, which is, of course, well above that 55,000 cap. However, each individual may not submit the application, may not appear for an interview, may not do so on that timely manner. Under a college meeting- I don't see your current line of argument as addressing the nature of my question. Let me back it up again. Let's assume, in light of Brock against Pierce County, that if the statute were addressed to the Department of State, Department of State's failure to do the job within the fiscal year would be remediable. The question is, why is the decision, why is inaction not remediable because of the particular statutory language that was used? I would be helped if you would address the actual statutory language. Your Honor, if the actual statutory language required- I quoted the actual statutory language now at least five times. I wish you would address it rather than going if something. The language as quoted does not require adjudication. It sets out the period of eligibility for a diversity visa and the timeline at which that eligibility expires. Nowhere in 1154 or elsewhere does the statute require the State Department to adjudicate each and every diversity visa by the end of the fiscal year or at all. And if it did, that would put us in a position where each of those 90,000 applicants that I referenced would need to have their applications adjudicated by statute even though the State Department by statute can only issue 55,000 diversity visas. The government would agree with Your Honor that if the statute did require the State Department to adjudicate each and every diversity visa application that is submitted, we would be in a different situation than we are today. But the- People have won, right? The lottery. It's illusory. It's illusory for them. The order or the lottery? I'm sorry. The actuality of it. We're talking about human beings here. Yes, Your Honor. So the diversity visa lottery provides them with an opportunity to apply for a diversity visa, a pathway towards immigration to the United States. It does not guarantee a diversity visa will be issued to them. There's also eligibility requirements that one must meet in order to ultimately be issued a diversity visa. The State Department routinely issues thousands of diversity visas to lottery selectees each year. Here, these 188 lottery selectees were simply some of those who unfortunately were not issued diversity visas in that year, but it does not put them in any different of a position than any other year or any other applicant who did not receive a diversity visa by the end of the fiscal year. And what is it that they actually did wrong so that they're not, you know, so that they're in their situation? I'm sorry, Your Honor. You froze in the middle of your question. I'm sorry. What did those who are in this position do or not do that has them where they are now? Well, Your Honor, what has them in the position before this court is that they sought relief after the end of the fiscal year, and that is what differentiates them from litigation in DC. But in terms of not being issued a diversity visa, that might be a variety of things. At the outset, the State Department simply does not get through every application in any given year. The statute, the selection at statute is based on a statutory rank order. So when individuals are selected, they are randomly by a computer assigned a visa case number that goes in rank order. The State Department must then process in that statutory rank order. So it is perhaps that some of these appellants have a very high case number that was randomly assigned to them at selection, and the State Department simply did not reach their case number by the end of the fiscal year. There are also quite a bit of other factors over the last couple of years, some of which were in the merits of the briefing, but not reached given the outcome of the motion to dismiss, such as severe issues with COVID-19 and the pandemic affecting conditions at consular posts, slowing down the processing of adjudication. But in terms of what would differentiate them from being able to get relief outside of their Gomez class membership, here they filed 80 days past the statutory fiscal year. The State Department has no authority to issue the diversity visas, even if the district court had ordered it to do so, ordered to adjudicate even just the applications. At the end of an adjudication, a consular officer must issue or refuse that diversity visa. And here, given that the statutory authority to issue for fiscal year 2020 has passed, the consular officer would at the end be required to refuse the diversity visas, leaving the appellants with what would have been an illusory order from the district court for the relief that they seek. And in conclusion, the government would respectfully request that this court affirm the district court's dismissal of appellant's lawsuit. Thank you. Thank you, counsel. Anything further, Ms. Glazer? Yes, Your Honor, very quickly. I would say first, contrary to the presentation made, there are only 18,000 visas that were issued in 2020. So there are over 30 visas still available. Now, I think the response to counsel is that the Administrative Procedure Act provides the remedy, and the court needs to decide what the 1154 is. If it is a jurisdictional provision, that's the end. We've submitted it is not. If it's a mandatory process issue, it's the end. It is not. If it is a statute of limitation, putting the onerous on the plaintiff, it's subject to tolling. If it's an administrative internal agency, as the court observed, and the Brock, I'm not familiar with that case, but I believe the Bernhardt seems to say the same thing. That is not preclusive of the court ordering and allowing a tardy performance. So the question is, what kind of deadline is 1154? Neither Edir or Ahmed have addressed it. No court has ever addressed the statutory language. They have simply stated it's a deadline. It's a nuding deadline. Well, the Supreme Court has specified that before something is withheld, either in a form of jurisdiction or a remedy, the first order for the court is to read the statute and exhaust the canons of statutory construction to determine what was the purpose of Congress. We will submit that the purpose of Congress here was to spur action by the government. As the Bernhardt said, not to punish tardy performance. And as such, then the court should apply the issue of tolling equitable relief, which is applied and has been applied to the Immigration Act time and again to determine that because of the government action, which was clearly unlawful preclusion and suspension of the diversity visa, these plaintiffs are entitled to an APA review and a remedy. Thank you, Counsel. The case is taken under advisement.